IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>vs. )<br>) **CRIMINAL NO. 15-44**<br>ANTONUON SMITH, )<br>)<br>Defendant. )<br>)<br>) | |

AMBROSE, United States Senior District Judge

## MEMORANDUM ORDER OF COURT

**I. Introduction**

Defendant has filed a Motion for Reduction of Sentence Pursuant to 18 U.S.C. 3582(c)(1)(A) and Request for Emergency Consideration (ECF 115) as well as a Supplemental Brief in Support of Motion. (ECF 121) He seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act, 18 U.S.C. 3582(c)(1)(A)(i). He contends that his medical conditions render him particularly susceptible to the COVID-19 virus while incarcerated. The Government has filed a Response and a Supplement. (ECF 122, 123) The Defendant thereafter filed a Reply. (ECF 124) After careful consideration of the submissions, and for the reasons set forth below, the Motion is granted.

**II. Background**

A grand jury for the Western District of Pennsylvania returned a three-count Indictment against the Defendant charging him at Count One with possession with intent to distribute 100 grams or more of a mixture and substance containing heroin, at Count Two with the possession of firearms in furtherance of a drug trafficking crime, and at Count Three with possession of a firearm by a convicted felon. (ECF 1) He pled guilty to all Counts on June 30, 2016 pursuant to a Rule 11(c)(1)(C) plea. (ECF 87) This Court sentenced him on October 26, 2016 to 84 months of

imprisonment at each of Counts One and Three, to be served concurrently with one another, and 60 months of imprisonment at Count Two, to be served consecutively with the sentence at Counts One and Three. (ECF 100) A total term of 4 years of supervised release was also imposed. He has been incarcerated since March 2, 2015. The Defendant's projected release date is April 24, 2025. (ECF 115, p. 22, ECF 122, p. 2) He asks for a sentence of time served, followed by a four-year term of supervised release. (ECF 115).

**III. Analysis**

Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons could seek a reduction of sentence. *United States v. Handerhan*, 789 Fed. Appx. 924, 925 (3d Cir. 2019). Section 603(b) of the First Step Act, entitled "Increasing the Use and Transparency of Compassionate Release," permitted prisoners the right to file compassionate release motions with the court "so long as they first ask the BOP to file a motion on their behalf and then either exhaust the BOP's administrative appeal process or wait 30 days, whichever comes first." *United States v. Somerville*, 12cr225, 2020 WL 2781585, at * 2 (W.D. Pa. May 29, 2020), *citing* 18 U.S.C. § 3582(c)(1); First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). The First Step Act thus empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). The statute provides that:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>> (i) extraordinary and compelling reasons warrant such a reduction….
>
> And that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission….

18 U.S.C. §3582(c)(1)(A). Because the Defendant has exhausted his administrative remedies, I turn to a consideration of whether, after considering the factors set forth in section 3553(a), the Defendant has established "extraordinary and compelling reasons" in support of compassionate release."[1]

The Sentencing Commission issued a policy statement related to § 3582(c)(1)(A). It provides, in part, that: "the court may reduce a term of imprisonment … if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13. The policy statement then identifies four categories of "extraordinary and compelling reasons." They consist of: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) other reasons as determined by the Director of the Bureau of Prisons. U.S.S.G. 1B1.13 Cmt., App. Note 1(A)-(D).

The Application Notes to the policy statement recognize that "extraordinary and compelling reasons" may exist based on the defendant's medical condition. That is, extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition, which substantially diminishes his ability to provide self-care within the correctional facility and from which he is not expected to recover. U.S.S.G. 1B1.13, Cmt., App. Note 1(A)(ii). Here the Defendant contends that his diagnosis of sarcoidosis coupled with his inability to provide self-care, satisfies this requirement.[2]

---

[1] Before a prisoner can file a compassionate release motion, administrative rights must be exhausted. The Government concedes that the Defendant has exhausted his administrative remedies. (ECF 122, p. 4, "The Defendant's May 21 Motion will be ripe for consideration on June 20, 2020.")

[2] The Defendant's initial diagnosis was metastatic lymphoma. (ECF 115) Consequently, he asserted that he demonstrated extraordinary and compelling reasons for release both because he suffered from a terminal illness and because he suffered from a serious medical condition which substantially diminished

There is some dispute as to the continued applicability of the policy statement and related commentary. It appears "in the commentary to the 2018 version of 1B1.13. The Sentencing Commission has not yet amended 1B1.13 or its commentary to account for the First Step Act." *Handerhan*, 789 Fed. Appx. at 925, n. 2, *citing, United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at * 2 (D. Me. July 11, 2019). The Government urges that the commentary to the policy statement continues to apply. (ECF 122, p. 6) I note that a "majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *United States v. Rodriguez*, 2020 WL 1627331, at * 4 (E.D. Pa. Apr. 1, 2020) (citations omitted).  I find the *Rodriguez* court's analysis of the issue to be persuasive. *See also*, *United States v. Somerville*, 12cr225, 2020 WL 2781585, at * 6-7 (W.D. Pa. May 29, 2020) (finding that the "catch-all" provision under (D) permits the court the authority to independently assess whether there are "extraordinary and compelling reasons.") (citations omitted). Nevertheless, I need not resolve the issue of the continued applicability of the policy statement because the Government concedes that the Defendant "has a 'serious physical or medical condition' that 'substantially diminishes' the defendant's ability 'to provide self-care within the environment of a correctional facility' during the pandemic, and is therefore an 'extraordinary and compelling reason' for release under 18 U.S.C. 3582(c)(1)(A)(i)." (ECF 122, p. 7)[3] Neither does the Government dispute the Defendant's assertions that the design of Fort Dix, where he is incarcerated, poses "a grave public health risk for the spread of COVID-19" given that it has no

---

his ability to provide self-care. (ECF 115) Further testing revealed that the Defendant suffers from sarcoidosis rather than metastatic lymphoma. Thus, he withdrew his contention that he has a terminal illness which constitutes an extraordinary and compelling reason. (ECF 121)

[3] The Government does urge that the Defendant's health has recently improved. (ECF 122, 123) However such improvement occurred only when the Defendant was transferred to the hospital due to a "failure to thrive." Regardless of any improvements, the Government does not dispute that the Defendant's health presents an extraordinary and compelling reason consistent with the First Step Act.

separate one-person housing cells, or that Fort Dix has suffered a from a serious outbreak of COVID-19. (ECF 115, p. 12)

Because there is no dispute as to whether the Defendant has demonstrated extraordinary and compelling reasons, I need only consider the factors set forth in section 3553(a), to the extent that they are applicable and whether such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission. The Government urges that such considerations mandate the denial of the request for relief. In particular, the Government contends that the Defendant remains a danger to society, and that consideration of the 3553(a) factors support the original sentence. That is, the Government argues that the Defendant's possession of 134 bricks of heroin, drug proceeds, firearms and his prior crimes mandates a denial of the request for compassionate release.

I remain concerned with the nature of circumstances of the offense and issue and with the Defendant's long criminal history, particularly because it includes the use of violence and the carrying of firearms. Yet the Defendant has been incarcerated since March of 2015. There is no indication that the Defendant has been subject to disciplinary actions while incarcerated. "Disciplinary record in prison bears on this assessment and is illustrative of character." *United States v. Ladson*, 2020 WL 3412574, at * 8 (E.D. Pa. June 22, 2020). Further, it appears that the Defendant has engaged in rehabilitative efforts during his incarceration. He participated in the Bureau of Prison's Residential Drug Abuse Program ("RDAP"). A court should "consider the inmate's participation in prison programming in tandem with the inmate's disciplinary record." *Ladson*, 2020 WL 3412574, at * 8.  I find persuasive the Program Coordinator's representation that, until his health issues arose, the Defendant was an "active participant" in the Program despite the fact that he was not eligible for a reduction in his sentence based upon is participation. (ECF 115, Ex. F) The Program Director indicates that the Defendant is "invested in his own treatment with the desire to be a prosocial member of society." (ECF 115, Ex. F) I also find convincing that research findings demonstrate that RDAP participants are "significantly less likely to recidivate

5

and less likely to relapse to drug use than non-participants." *Id.* Further, the Defendant is also taking courses on parenting, rational and critical thinking, and math. Additionally, the Defendant has a close connection with his family. His girlfriend and son stand ready to welcome him into their home. (ECF 115, p. 25) With the additional of his siblings, aunt, and cousins, it is clear that he has a "supportive family who will help [his] reentry into the community." *Id.* In light of the Defendant's rehabilitative efforts while incarcerated, the apparent absence of any disciplinary conduct while incarcerated, and his supportive family, I find that the Defendant is not a danger to the community.

I also find that reducing his sentence is consistent with section 3553(a) factors. Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution to any victims of the offense. 18 U.S.C. 3553(a). Considering the "nature and circumstances of the defendant," I find that his rehabilitation and good conduct weigh in favor of a sentence reduction. Additionally, as my colleague recently noted, "[i]f generalized (albeit legitimate) concerns about the dangers of guns and drugs were enough to bar … compassionate release, almost no one would be eligible." *Sommerville*, 2020 WL 2781585, at * 12. I must also consider the "need for the sentence imposed." A sentence should be "sufficient, but not greater than necessary." While I do not debate the seriousness of the Defendant's crimes, I believe that "the significant dangers" that the Defendant "faces as an incarcerated person suffering from [sarcoidosis] during the COVID-19 pandemic – does not undermine the seriousness of his crime or mean others will not be deterred from committing similar crimes." *Id.*, at *10. Further, his engagement in the rehabilitation

programs offered at Fort Dix and his efforts at continued education weigh in favor of a reduction. As to the remaining considerations, the Government has not indicated that granting the motion will create unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct and the need to provide restitution to any victims of the offense is inapplicable.

As another district court in the Third Circuit recognized, "it is difficult to overstate the severity of the COVID-19 outbreak and the global crisis that society is facing in light of this unprecedented public health crisis." *United States v. Catanzarite*, 2020 WL 2786927, at * 3 (D. N.J. May 29, 2020). After careful consideration, and based upon the record before me, I conclude that the Defendant would not endanger his community if released and that the 3553(a) factors weigh in favor of a sentence reduction. Consequently, the Defendant's sentence is reduced to time served. The term of supervised release remains intact. Further, his supervised release conditions should be modified in order to ensure, if able, his participation in the Transitional Drug Abuse Treatment ("TDAT") program.

The Government has requested that, should the motion be granted, the Bureau of Prisons should be allowed to place the Defendant in a 14-day quarantine period and to conduct medical clearance before release, in order to minimize the possible spread of COVID-19 from the Defendant to the general public. (ECF 122, p. 8) The Government represents that this period of time will also allow the BOP to "fulfill its obligations under certain federal statutes." *Id.* While this request seems reasonable, I note that the Defendant has been at a medical facility rather than at Fort Dix. If he is still at the facility, that facility may be able to screen him for the virus, thus reducing the need for a period of confinement at the BOP. The BOP is ordered to release the Defendant as soon as is practical.

THEREFORE, this 26th day of June, 2020, it is ordered that Defendant's Emergency Motion for A Reduction in Sentence (ECF 115) is GRANTED.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose
United States Senior District Judge